UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANDREW SMITH,<br><br>  Plaintiff(s),<br><br>  v.<br><br>WOLF PERFORMANCE AMMUNITION, et al.,<br><br>  Defendant(s). | Case No. 2:13-CV-2223 JCM (NJK)<br><br>ORDER |

Presently before the court is defendant Sporting Supplies International, Inc.'s ("Sporting") motion for summary judgment. (Docs. ## 48, 49).[1] Plaintiff Andrew Smith filed a response (doc. # 50), and Sporting filed a reply (doc. # 54).

Also before the court is third-party plaintiff Tulammo USA, Inc.'s ("Tulammo") motion to dismiss third-party complaint. (Doc. # 51). Sporting filed a response (doc. # 55), and Tulammo filed a reply (doc. # 56).

Finally before the court is Sporting's motion for default judgment. (Docs. ## 69, 70).[2] Defendant Tula Cartridge Works ("Tula") filed a response. (Doc. # 79). Sporting did not file a reply and the deadline to do so has passed.

---

[1] Sporting filed a "motion for summary judgment," which appears to be a summary of its arguments, in conjunction with a memorandum in support of the motion, which addresses its arguments in full.

[2] Sporting filed a "motion for default judgment," which appears to be a summary of its arguments, in conjunction with a memorandum in support of the motion, which addresses its arguments in full.

**James C. Mahan**
**U.S. District Judge**

I.  **Background**

   A. *Plaintiff's complaint*

Plaintiff Andrew Smith filed his complaint in the Eighth Judicial District Court in Clark County, Nevada on October 31, 2014.  (Doc. # 1-2 at 6).  Plaintiff's complaint alleges claims arising from a firearm-related accident and injuries plaintiff allegedly sustained.  (*Id.* at 7).

Plaintiff alleges that on or about April 7, 2012, he was in Sloan, Nevada using a Bushmaster firearm containing "Wolf" brand ammunition.[3]  (*Id.*).  Plaintiff alleges that his firearm exploded in his face, causing severe physical and emotional injuries. (*Id.*).  Plaintiff brought claims against various defendants for (1) negligence/gross negligence; and (2) strict liability in tort.

Defendants are Wolf Performance Ammunition ("Wolf"), Sporting, SSI Manufacturing Technologies Corp. ("SSI"), Bushmaster Firearms ("Bushmaster I"), Bushmaster Firearms International, LLC ("Bushmaster II"), and Remington Arms Company, LLC ("Remington").  (Doc. # 1-2 at 5.)  Sporting sells ammunition under the brand name of "Wolf Performance Ammunition."  (Doc. # 1-3).[4]

Sporting removed the action to this court on December 5, 2013.  (Doc. # 1).  Sporting and Remington filed answers on December 11, 2013.  (Docs. ## 1, 7, 9).

   B. *Defendant Sporting's third-party complaint*

On July 17, 2014, Sporting filed a motion for leave to file a third-party complaint.  (Doc. # 31).  Sporting asserted that Tula Cartridge Works ("Tula") and Tulammo USA, Inc. ("Tulammo") may be liable to Sporting for contribution and indemnification.  (Doc. # 31 at 5). Tula is a manufacturer of ammunition located in Tula, Russia.  (Doc. # 51 at 2).  Tulammo is an ammunition distributor.  (*Id.*).

---

[3] Specifically, plaintiff's interrogatory alleges he was using Wolf ammunition, steel cartridge, .223 caliber.  (Doc. # 55-1 at 3).  Plaintiff cannot recall from where he purchased the ammunition, but believes he purchased it from either Wal-Mart or Desert Hills Shooting Club. (*Id.*).

[4] Wolf Performance Ammunition is a trademarked design owned by Sporting, not a separate business entity. (Doc. # 7 at 2).  Remington is successor in interest to Bushmaster.

The court granted Sporting's motion on August 8, 2014. (Doc. # 35). On August 12, 2014, Sporting filed a third-party complaint against Tula and Tulammo. (Doc. # 36).

The parties have filed various motions. The court will address each pending motion in turn.

**II.     Discussion**

   *A. Sporting's motion for summary judgment as to all claims in plaintiff's complaint*
   *(docs. ## 48, 49)*

As discussed previously, plaintiff alleges that, on April 7, 2012, while using a Bushmaster firearm and Wolf ammunition, his firearm exploded in his face. (Doc. # 1-2 at 7). Plaintiff alleges the explosion caused severe physical and emotional injuries. (*Id.*). Plaintiff brings claims against the above-named defendants for (1) negligence/gross negligence; and (2) strict liability in tort.

Defendant Sporting moves for summary judgment on all of plaintiff's claims. (Docs. ## 48, 49).

   *1. Legal Standard – Rule 56 summary judgment*

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways:  (1) by presenting evidence to negate an

essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-50.

   *2. Discussion*

Plaintiff and defendant both conflate the claims of negligence and strict liability in tort. Negligence and strict liability are not mutually exclusive because they differ in focus. Negligence focuses on the conduct of the manufacturer; strict liability focuses on the product and the

consumer's expectation. *See, e.g.*, *Toner for Toner v. Lederle Labs.*, 828 F.2d 510, 512 (9th Cir. 1987) (citations omitted); *see also Johnson v. John Deere Co.*, 935 F.2d 151, 154 (8th Cir. 1991) (in a strict liability failure to warn claim the focus is on the nature of the product, while in a negligent failure to warn claim the focus is on the defendant's conduct); *Peters v. AstraZeneca LP*, 224 F. App'x 503, 506 (7th Cir. 2007) (strict liability focuses on the defendants' product, while negligence focuses on the defendants' conduct); *Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 738 (3d Cir. 1990) (negligence focuses upon the duty of a cautious prudent manufacturer and strict liability analysis focuses instead on consumer expectations).

### a) Negligence/gross negligence

Plaintiff's first claim for relief is for "Negligence/Gross Negligence." (Doc. # 1-2 at 7). Plaintiff alleges that each of the defendants were negligent in "designing, manufacturing, assembling, inspecting, distributing, and selling their products." (Doc. # 1-2 at 7).

To state a claim for negligence under Nevada law, a plaintiff must establish: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injuries; and (4) plaintiff suffered damages. *See Scialabba v. Brandise Constr. Co.,* 921 P.2d 928, 930 (Nev. 1996). "Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a prudent man." *Hart v. Kline,* 116 P.2d 672, 674 (Nev. 1941). "Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure." *Id.*

As discussed above, the focus of a negligence inquiry is on the conduct of the defendants. The court imposes liability when a product's manufacturer or seller has failed to use reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of harm. *See Toner*, 828 F.2d at 513. The plaintiff bears the burden of proof with respect to a negligence claim.

Here, plaintiff fails to set forth any evidence to support his claim that the firearm or the ammunition that he used were negligently manufactured (or designed, inspected, tested, distributed, or marketed). Plaintiff presents no evidence that the manufacturers or sellers failed to use reasonable care to eliminate foreseeable dangers. In fact, plaintiff's interrogatories state that

James C. Mahan
U.S. District Judge

he had the firearm since approximately 2002 and had fired at least 2,000 rounds or more through the subject rifle prior to the incident. (Doc. # 55-1 at 13). Further, plaintiff stated that on the day of the incident, he had fired nineteen rounds with no malfunction or mechanical problems before the explosion occurred. (*Id.* at 7).

Plaintiff asserts that the court can infer negligence through res ipsa loquitur. "*Res ipsa loquitor* is an exception to the general negligence rule" that "a mere happening of an accident or injury will not give rise to the presumption of negligence." *Pate v. Wal-Mart Stores, Inc.*, No. 2:12-cv-1377-JAD-PAL, 2014 WL 3613385, at *5 (D. Nev. July 21, 2014) (citing *Woosley v. State Farm Ins. Co.,* 18 P.3d 317, 321 (Nev. 2001)). The doctrine allows a party "to infer negligence" when (1) the event is of a kind that "ordinarily does not occur in the absence of someone's negligence," (2) it is "caused by an agency or instrumentality within the exclusive control of the defendant, and (3) it was "not due to any voluntary action or contribution of the plaintiff." *Id.* at *5 (citing *Woosley*, 18 P.3d at 321).

Though "requir[ing] a plaintiff to establish exclusive control in the defendant with respect to any possible cause of the accident before permitting the application of res ipsa loquitur would emasculate the doctrine" plaintiffs are required "to produce sufficient evidence from which it could be said that it was more likely than not that it was negligence on the part of his adversary." *Am. Elevator Co. v. Briscoe*, 93 Nev. 665, 670, 572 P.2d 534, 537 (1977).

Here, plaintiff fails to produce any evidence that Sporting had exclusive control over the ammunition or firearm. Accordingly plaintiff's attempt to assert negligence through *res ipsa loquitur* fails.

The court finds that plaintiff presents no evidence to raise a genuine issue of material fact with respect to negligence in the design, manufacturing, or distribution process. Accordingly, summary judgment in favor of Sporting with respect to plaintiff's negligence claims is appropriate.

b) *Strict liability in tort*

Plaintiff's second claim for relief is for "Strict Liability in Tort." (Doc. # 1-2 at 9). Plaintiff alleges that at the time of the incident, "the subject firearm and/or ammunition had design and/or

**James C. Mahan**
**U.S. District Judge**

- 6 -

manufacturing defects . . . ." (*Id.*). As discussed above, the focus of a strict liability inquiry is on the product.

The Nevada Supreme Court has extended an action for strict liability in tort to all products. *See Ginnis v. Mapes Hotel Corp.,* 470 P.2d 135, 138 (Nev. 1970) (citation omitted). A strict products liability action requires a plaintiff to establish: (1) defendant placed a defective product on the market; (2) the defect caused plaintiff's injury; and (3) the defect existed when the product left the hands of defendant. *See Rivera v. Phillip Morris,* 209 P.3d 271, 275 (Nev. 2009); *Allison v. Merck & Co.,* 878 P.2d 948, 952 (Nev. 1994) (citation omitted); *Shoshone Coca–Cola Co. v. Dolinski,* 420 P.2d 855, 858 (Nev. 1966); *Ginnis,* 470 P.2d at 138.

A product is defective when it is "dangerous because [it] fail[s] to perform in the manner reasonably expected in light of [its] nature and intended function." *Allison*, 878 P.2d at 952 (1994) (internal quotation marks and citation omitted). The defect must also be "unreasonably dangerous." *See Lewis v. Sea Ray Boats, Inc.,* 65 P.3d 245, 249 (Nev. 2003).

"In strict product liability cases, the plaintiff carries both the burden of production and the burden of persuasion." *Id.* (citing *Shoshone Coca-Cola v. Dolinski,* 420 P.2d 855, 857-58 (Nev. 1966)). To prove proximate cause in a strict products liability action in Nevada, "the plaintiff must show that the design defect in the product was a substantial factor in causing his injury." *Price v. Blaine Kern Artista, Inc.,* 893 P.2d 367, 370 (Nev. 1995). "A plaintiff need not 'produce direct evidence of a specific product defect [or] negate any alternative causes of the accident.' *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (citing *Stackiewicz v. Nissan Motor Corp.,* 686 P.2d 925, 927 (1984)). "An 'unexpected, dangerous malfunction' suffices." *Id.* (citing *Stackiewicz*, 686 P.2d at 928).

The proper defendants in strict products liability cases are manufacturers and distributors. *Id.* (citations omitted) ("Although manufacturers are not insurers of their products, where injury is caused by a defective product, responsibility is placed upon the manufacturer and the distributor of the defective product rather than on the injured consumer.").

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

                    *i.*      *Whether plaintiff establishes the element of 'product defect'*

Sporting asserts that summary judgment is appropriate, because plaintiff cannot establish a product defect in his prima facie case. (Doc. # 48 at 2). Sporting argues that plaintiff has offered no evidence of a manufacturing or design defect in the firearm or the ammunition involved in the accident. Specifically, Sporting argues that plaintiff cannot prove that any of the products involved in the accident were defective without an expert witness to testify as such. (Doc. # 49 at 3-4).

Sporting claims that plaintiff's case fails because expert testimony is required in this products liability matter and plaintiff has failed to disclose a liability expert. (Doc. # 48 at 2). Sporting asserts that plaintiff was "allegedly injured when the rifle he was shooting experienced a failure and Plaintiff was injured from debris exiting the chamber." (Doc. # 49 at 4). According to Sporting, plaintiff must have an expert to establish that a defect existed in the rifle, ammunition, or both; and that any such defects were the cause of plaintiff's injuries. (*Id.*). Therefore, Sporting asserts that, because plaintiff has not disclosed any experts that will give product defect-based opinions, he cannot meet his burden to prove defect. (*Id.*).

Sporting cites *Griffin v. Rockwell Intern, Inc.*, 620 P.2d 862 (Nev. 1980) to support this assertion. The court finds *Griffin*, a per curiam opinion reviewing for abuse of discretion and reversible error by the lower court, is inapplicable to the instant facts.

In *Griffin*, the Nevada Supreme Court found no abuse of discretion where a lower court struck testimony by an expert witness who testified "out of his field" of expertise. *Griffin*, 620 P.2d at 863. Nevada's courts have not expressly stated that a plaintiff must present expert testimony to establish a defect, *see Roberts v. Albertson's LLC*, 464 F. App'x 605, 607 (9th Cir. 2011), and the *Griffin* court's findings do not suggest to this court in any way that expert testimony is required for the instant plaintiff to withstand summary judgment.

The *Griffin* court also found no reversible error where the lower court dismissed plaintiff's case under Federal Rule of Civil Procedure 41(b) where the plaintiff's only evidence of a claimed defect came from plaintiff's testimony, the stricken testimony of plaintiff's expert, and an instruction booklet featuring the alleged defect which was printed a year after the accident. *Id.*

**James C. Mahan**
**U.S. District Judge**

- 8 -

Here, plaintiff is not relying on an expert witness at all, let alone one testifying outside of his field. Further, plaintiff has produced the actual firearm and the remnant cartridge case rim to defendants for examination,[5] whereas in *Griffin*, plaintiff could not produce the allegedly defective item. (*See* doc. # 48-2 at 2).

Plaintiff responds that an expert is not required for him to prove his claim of strict products liability, because the firearm "clearly failed to perform in a manner reasonably expected."[6] (Doc. # 50 at 3,7). Further, plaintiff asserts that his two eye witnesses will testify to what they saw occur. Plaintiff asserts that "[i]t is general knowledge that firearms do not ordinarily explode, causing shrapnel to fly out and lodge in the user's body. This event would never occur in the absence of some defect or negligence." (Doc. # 50 at 8).

Plaintiff, though not explicitly stating so, appears to be alleging that he may prove product defect through a *res ipsa loquitur* type of inference with respect to his products liability claim. Sporting asserts that "[p]laintiff cannot rely on a *res ipsa loquitur* type of reasoning in this products liability case" and therefore, fails to establish the existence of a defect. (Doc. # 48 at 2).

Sporting is incorrect. The Nevada Supreme Court has explicitly stated that plaintiffs may rely on a *res ipsa loquitur* type of inference to meet their burden of establishing a defect in strict liability cases. *See Allison v. Merck & Co.*, P.2d 948, 952 n.5 (1994) ("*Stackiewicz [v. Nisson Motor Corp. in U.S.A.]* does stand for the proposition that plaintiffs may rely on a res ipsa loquitur type of inference to meet their burden of establishing a defect in strict liability cases).

---

[5] According to defendant's expert Michael Shain, plaintiffs made the subject Bushmaster rifle, model XM15-ES2, serial number L322618, "available to Defendants for a cursory, non-destructive inspection." (Doc. # 48-2 at 2). The rifle's pistol grip, buffer tube and butt stock assembly were not presented for inspection. (*Id.*). A remnant of a cartridge case head was also included in the items presented for inspection. The head stamp of the subject case head was not legible. (*Id.*).

[6] Plaintiff asserts that "it does not take an expert to opine that the explosion of a firearm caused shrapnel to lodge into the Plaintiff's skin." (Doc. # 50 at 3). Plaintiff further asserts that, counter to Sporting's characterization of the event as plaintiff being "injured from debris exiting the chamber," (doc. # 49 at 4), plaintiff's complaint alleges that he was injured when the firearm "exploded in [his] face," (doc. # 1-2 at 7).

James C. Mahan
U.S. District Judge

- 9 -

In *Stackiewicz v. Nisson Motor Corp. in U.S.A.*, the Nevada Supreme Court allowed a strict liability claim regarding an alleged spontaneous steering defect in an automobile that the plaintiff claimed was the cause of her injuries to go to a jury. *Stackiewicz*, 686 P.2d at 926. The court held that that the specific cause of a malfunction need not always be shown. *See id.* at 928. When "'machinery "malfunctions," it obviously lacks fitness regardless of the cause of the malfunction.'" *Id.* 928 (quoting *Lindsay v. McDonnell Douglas Aircraft Corp.,* 460 F.2d 631, 639 (8th Cir. 1972)).

In *Allison v. Merck & Co., Inc.*, the court, relying on *Stackiewicz*, allowed a plaintiff to prove a defect in a vaccine by proving that it caused his brain damage, i.e., that it "failed to perform in the manner reasonably to be expected." *See Allison,* 878 P.2d at 953. *Stackiewicz* and *Allison* both instruct that in certain circumstances plaintiffs must be given an opportunity to prove that malfunctioning machines caused their injuries. *See Allison*, 878 P.2d at 953 (quoting 50 Minn. L. Rev. 791, 799 (1966)) ("public interest in human safety requires the maximum possible protection for the user of the product, and those best able to afford it are the suppliers of the chattel").

*Allison* explained that *Stackiewicz* held that evidence of a steering malfunction was sufficient circumstantial evidence of a defect or "unreasonably dangerous condition" to support a judgment based on strict product liability in favor of the plaintiff. *Allison v. Merck & Co.*, 878 P.2d 948, 952 n.5 (1994). The *Allison* court noted that the approach it took in *Stackiewicz* was not exceptional. *Id.* Several courts have held that plaintiffs may rely on circumstantial evidence to establish a product defect. *Id.* (citing *Lindsay v. McDonnell Douglas Aircraft Co.,* 460 F.2d 631 (8th Cir. 1972), on remand 352 F. Supp. 633 (E.D. Mo. 1972), affirmed 485 F.2d 1288 (8th Cir. 1973) (a fire in a new Navy jet was evidence of a malfunction, which in turn was evidence of some defect where the jet caught on fire and crashed into ocean); *Kileen v. Gen. Motors Corp.,* 421 A.2d 874 (Conn. Super. Ct. 1980); *Lee v. Crookston Coca-Cola Bottling Co.,* 188 N.W.2d 426 (Minn. Sup. Ct. 1971); *Jagmin v. Simonds, Abrasive Co.,* 211 N.W.2d 810 (Wis. Sup. Ct. 1973)).

Additionally, in *Phillips v. C.R. Bard, Inc.*, a court in this district depended on *Stackiewicz* and *Allison* in denying a defendant's motion for summary judgment as to plaintiff's manufacturing and design defect claims. *See Phillips v. C.R. Bard, Inc.*, No. 3:12-cv-00344-RCJ, 2014 WL

**James C. Mahan**
**U.S. District Judge**

- 10 -

7177256, at *6-8 (D. Nev. Dec. 16, 2014). The *Phillips* court found that its plaintiff could potentially prove the existence of a defect by showing that an implanted medical device's failure to stay in place—resulting in the implant's migration to and perforation of the plaintiff's heart—caused his harm. *See id.* at *8. The court analogized to *Allison*, finding that "[j]ust as the Plaintiff in *Allison* could prove a defect in a vaccine by proving that it caused brain damage, i.e., that it 'failed to perform in the manner reasonably to be expected,' Plaintiff here could prove a defect by proving that the [medical device] caused him harm that could only occur if it 'failed to perform in the manner reasonably to be expected.'" *Id.*

Here, plaintiff is claiming in effect that the firearm or the ammunition "malfunctioned" when it "exploded in [his] face." (Doc. # 1-2 at 7). *Stackiewicz*, *Allison*, and *Phillips* suggest that a firearm which explodes in its operator's face "obviously lacks fitness regardless of the cause of the malfunction." *Stackiewicz*, 686 P.2d at 928 (quoting *Lindsay*, 460 F.2d at 639). Therefore, the foregoing line of cases suggest that, just the plaintiffs in *Stackiewicz*, *Allison*, and *Phillips* had to be given an opportunity to prove that a malfunctioning product caused their injuries, so must plaintiff here.

Sporting asserts that a separate Nevada Supreme Court opinion, *Michelin North America, Inc. v. Deal*, No. 54472, 2012 WL 1929336 (Nev. May 23, 2012), instructs that because there are multiple, identified possible causes for the malfunction at issue in this case, plaintiff cannot rely on the *Stackiewicz* line of cases without an expert to present evidence of a defect. (Doc. # 48 at 6).

The *Michelin* court found that *Stackiewicz* did not relieve a plaintiff of presenting evidence of a defect in the plaintiff's tire to bring a successful products liability claim at trial. *Michelin*, 2012 WL 1929336 at *1. The court explained that "an inference of liability is proper under *Stackiewicz* only where there is *no other identifiable cause* for the malfunction." *Id.* (emphasis original). Because the defendant introduced evidence that the tire had been punctured, improperly repaired, suffered impact, and was underinflated—all of which were potentially identifiable causes of the separated tire—the court held that there could be no inference of liability for the plaintiff. *Id.* (internal citations omitted).

1    *Michelin* clarified that *Stackiewicz* merely carves out a narrow exception to general liability
2    principles. *Id.* at *2. However, *Michelin* applies where a defendant introduces evidence showing
3    another *identifiable* cause for the malfunction, not just mere *potential* for another cause for the
4    malfunction.

5    Here, it is unarguable that a firearm that explodes or ammunition that causes a firearm to
6    explode in the face of its user does not operate in the manner reasonably expected. Sporting's
7    expert witness, Michael Shain, notes the extensive damage to the firearm from a "high pressure
8    event" including the "asymmetrical and catastrophic failure of the bolt lugs," and a "damage
9    signature that indicates pressurized gas flowed form the chamber of the subject rifle back through
10   the bolt, bolt carrier and into the receiver of the rifle." (Doc. # 48-2 at 3-4). Further, Shain notes
11   that the "failure of the bolt lugs may [ ] be attributable to metallurgical and manufacturing
12   characteristics or to abuse or misuse of the firearm." (Doc. # 48-2 at 3-4).

13   Shain's preliminary conclusion states that "[t]he cause of this incident cannot be
14   conclusively determined. There are many scenarios that could result in the damage seen in this
15   rifle. Additional examination of the rifle components and testing may reveal more information
16   about the cause of the failure." (Doc. # 48-2 at 5.)

17   The court finds that, unlike *Michelin*, where the defendant had evidence that plaintiff's
18   allegedly defective tire had been punctured, improperly repaired, suffered impact, and was
19   underinflated, here Sporting's expert cannot conclusively give an identifiable cause of the pressure
20   build up which caused the firearm at issue to explode. Sporting presents no evidence that plaintiff
21   did in fact misuse the firearm or ammunition, and its expert cannot state conclusively that the cause
22   of the incident was not "attributable . . . to manufacturing characteristics."

23   Accordingly, the court finds that Sporting has not provided evidence to negate plaintiff's
24   assertion that the explosion, occurred because of a product defect in either the firearm or the
25   ammunition. Accordingly, Sporting's claim for summary judgment on the claim of strict product
26   liability fails. The court will deny Sporting's motion for summary judgment with respect to strict
27   liability in tort.

28

**James C. Mahan**
**U.S. District Judge**

- 12 -

*B. Tulammo's motion to dismiss SSI's third-party complaint (doc. # 51)[7]*

As discussed above, plaintiff claims that he sustained certain injuries on April 7, 2012, arising from a firearm-related accident. Plaintiff was allegedly using Wolf ammunition at the time of the accident, which he purchased on a date prior to April 7, 2012. Before initiating the instant lawsuit, plaintiff allegedly claimed that he purchased the Wolf ammunition at Wal-Mart. (Doc. # 55 at 2). Plaintiff's complaint asserts that he purchased the ammunition from either Wal-Mart or Desert Hills Shooting Club. (Doc. # 55 at 2).

Sporting brought a third-party complaint against Tula and Tulammo. (Doc. # 36). Tula is an ammunition manufacturer located in Russia. (Doc. # 51-1). Tulammo is an ammunition distributer that distributes ammunition to the United States. (*Id.*). Sporting alleges that Tula and Tulammo are liable to Sporting for derivative claims of indemnification and contribution. (Doc. # 36).

Sporting's third-party complaint asserts that it did not sell to Wal-Mart prior to April 7, 2012 – the date of plaintiff's accident. (Doc. # 36 at 4). Accordingly, Sporting asserts that Wal-Mart did not carry Wolf ammunition when plaintiff purchased the ammunition involved in the accident. (*Id.*). Sporting asserts that Tulammo had a distribution relationship with Wal-Mart and sold "Tulammo" brand ammunition to Wal-Mart prior to April 7, 2012. (*Id.*). Sporting further asserts that Tulammo also sold "Tulammo" brand ammunition to Wal-Mart using the Wolf headstamp[8] (and associated lot number P806-09) prior to plaintiff's accident. (*Id.*).

In response to the third-party complaint, Tulammo filed the instant motion to dismiss. (Doc. # 51). Tulammo asserts that Sporting fails to state a claims upon which relief may be granted. (*Id.*).

. . .

---

[7] Tulammo asks this court to take judicial notice of the complaint in *Andrew Smith v. Wolf Performance Ammunition, et al.*, case no. A-13-691034-C; filed in Clark County District Court, Nevada. The complaint which Tulammo asks the court to take judicial notice of is the state court complaint that defendants removed in the instant case. The court clearly considers the initiating complaint of a case. Accordingly, Tulammo's request for judicial notice is unnecessary.

[8] A headstamp is the marking on the bottom of a firearm cartridge case, which generally tells who manufactured the case.

**James C. Mahan**
**U.S. District Judge**

- 13 -

*1. Legal Standard – Rule 12(b)(6) motion to dismiss*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id*. (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true

must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### 2. Discussion

Tulammo asserts that there are "no set of facts that exist or could be discovered that link ammunition manufactured in 2009 for Wolf to Tulammo" since Tulammo did not begin to distribute ammunition until March 2010. (*Id.* at 3). Tulammo asserts that all ammunition it distributed was manufactured in 2010 and contained 2010 stamps. (*Id.*). Therefore, Tulammo asserts that the third-party complaint against it fails "as a matter of law" and should be dismissed. (*Id.*).

Tulammo asserts that it did not exist as a company until late 2009, and did not begin to distribute ammunition until March 2010. (*Id.*). Accordingly, Tulammo claims that all ammunition it distributed was manufactured in 2010 and contained 2010 headstamps. (*Id.*). Because plaintiff alleges that the cartridge in the rifle at the time of the incident came from a Wolf box with lot number P806-09 – with the "09" representing a 2009 manufacture year – Tulammo cannot have supplied the ammunition in question. (*Id.*).

Tulammo supports its motion to dismiss with the declaration of Tulammo's president, Charles Grasso. (*See* doc. # 51-1). Grasso claims that Tulammo did not sell Wolf ammunition in Wolf boxes and did not sell any ammunition with an "09" lot designation. (*Id.*).

Sporting argues that Tulammo improperly seeks to introduce extrinsic evidence into their motion to dismiss, instead of "relying on the four corners" of the third-party complaint. (Doc. # 55 at 3). Sporting asserts that "[t]he declaration, which makes several contested factual assertions about what type of Wolf ammunition Tulammo may or may not have sold during different time periods, is not the type of extrinsic evidence permitted to support a motion to dismiss and is not subject to judicial notice." (*Id.*).

Further, Sporting argues that Grasso's declaration, and Tulammo's motion in general, "presents nothing more than a premature attack on the facts at issue in the Third-Party Complaint." (*Id.*). Finally, Sporting asserts that Tulammo's motion does not challenge the legal theories raised by Sporting.

**James C. Mahan**
**U.S. District Judge**

- 15 -

Tulammo replies that Sporting's opposition "fails to bring forth any admissible evidence to dispute Tulammo's motion to dismiss . . . ." (Doc. # 56 at 3). However, the court's evaluation of evidence is relevant only if the court chooses to convert Tulammo's motion to dismiss to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

> a) *Conversion of a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment*

Federal Rule of Civil Procedure 12(d) governs the court's consideration of matters outside the pleadings. It provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). The court's decision to exclude extraneous matter is discretionary. *Cooper v. Pickett,* 137 F.3d 616 (9th Cir. 1997); 5C C. Wright & A. Miller, Federal Practice & Procedure: Civil 3d § 1366 at 159 (3d ed. 2004) ("[F]ederal courts have complete discretion").

When applying Rule 12(d), the court engages in a two-step inquiry. First, the court must determine whether the extraneous material is considered "matters outside the pleadings." *See* Fed. R. Civ. P. 12(d). The court's consideration of affidavits and declarations require conversion to summary judgment. Wright & Miller, *supra,* § 1366 at 180; *Pendleton v. Housewright,* 651 F. Supp. 631, 633 (D. Nev. 1986) (citing *Townsend v. Columbia Operations,* 667 F.2d 844, 849 (9th Cir. 1982)). Second, the court must decide whether to exclude the extraneous matter or convert the motion to dismiss into a motion for summary judgment.

Here, Tulammo filed the instant motion as a motion to dismiss citing the Rule 12(b)(6) legal standard for its assertion that Sporting's third-party complaint should be dismissed. (*See* doc. # 51). Tulammo makes no mention of Rule 56 or summary judgment in its motion. However, Tulammo does mention Rule 56 in its reply to Sporting's response and asserts that the motion to dismiss should be converted to a motion for summary judgment based on Sporting's inclusion of additional exhibits. (*See* doc. # 56 at 7).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 16 -

The court declines to convert Tulammo's motion to dismiss to a motion for summary judgment. Tulammo initiated the instant motion as a "motion to dismiss" and cited the Rule 12(b)(6) standard. Despite asserting that its argument was brought under Rule 12(b)(6), Tulammo crafted its entire argument around the court's consideration of a single-page affidavit, which is inappropriate for the court to consider at the motion to dismiss stage.

Sporting responded appropriately based on the Rule 12(b)(6) motion to dismiss standard. As a precaution, Sporting responded with an alternative argument should the court be "inclined to convert this 12(b)(6) motion to a Rule 56 motion for summary judgment." (Doc. # 55 at 3). Accordingly, the court will not convert a Rule 12(b)(6) motion filed as such by Tulammo, simply because Sporting provided evidence to cover its bases.

### b) Tulammo's motion to dismiss Sporting's third-party complaint

Tulammo asserts that plaintiff's complaint "***must contain admissible facts*** sufficient to 'state a claim to relief that is plausible on its face.'" (*Id*. at 7) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 at 569). Therefore Tulammo states that its "motion to dismiss" should be granted because Sporting "fails to bring forth any admissible evidence to dispute Tulammo's motion to dismiss . . . ." (Doc. # 56 at 3).

Tulammo misstates and misunderstands the Twombly/Iqbal pleading standard. Twombly/Iqbal does not require a complaint to prove its factual assertions are admissible or true, only that they are plausible when considered solely on the face of the complaint.

Tulammo's motion fails to challenge the legal theories raised by Sporting and relies on an inapplicable affidavit as its sole support for dismissal. Accordingly, the court will deny Tulammo's motion to dismiss Sporting's third-party complaint.

### C. Sporting's motion for default judgment against Tula

On August 12, 2014, Sporting filed its third-party complaint against Tula, a Russian manufacturer of ammunition, and Tulammo, an American ammunition distributor. (Doc. # 36). On December 2, 2014, Sporting filed a motion for substitute service on Tula (doc. # 57), which this court granted on January 23, 2015 (doc. # 64). On January 29, 2015, Sporting served the summons and third-party complaint on Tula by international mail to Tula's address in Russia and

**James C. Mahan**
**U.S. District Judge**

also by electronic correspondence to the email addresses listed on Tula's website. (Doc. # 69-1). Tula's deadline to answer Sporting's third-party complaint was March 5, 2015.

On March 10, 2015, Sporting filed a motion for default judgment and memorandum in support against Tula. (Docs. ## 69, 70). Sporting asserts that Tula has failed to answer or otherwise respond to its third-party complaint. (Doc. # 69 at 2).

*1. Legal Standard – Rule 55 default judgment*

Default judgment is appropriate "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. . ." Fed. R. Civ. P. 55(a). Federal Rule of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies to the clerk of the court as required by subsection (a) of this rule." Fed. R. Civ. P. 55(b)(2).

Obtaining a default judgment entails two steps: "first, the party seeking a default judgment must file a motion for entry of default with the clerk of a district court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint, and, second, once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party." *See UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 840 (S.D. Ill. 2006). Where a party has not been properly served, there is no basis for a court to enter default judgment. *See Fairly v. Potter*, 2003 WL 403361, *4 (N.D. Cal. 2003).

The choice whether to enter a default judgment lies within the discretion of the trial court. *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980). In the determination of whether to grant a default judgment, the trial court should consider the seven factors articulated in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). These factors are: (1) the possibility of prejudice to plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits. *Id.* In applying these *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *see* Fed. R. Civ. P. 8(d).

**James C. Mahan**
**U.S. District Judge**

- 18 -

*2. Discussion*

Sporting's motion fails for procedural reasons. Sporting has not filed a motion for entry of default with the clerk of the District of Nevada. As such, the clerk has not entered a default against Tula.

Further, Tula asserts that it became aware of the pending litigation shortly after Sporting filed its motion for default judgment. Tula has since had counsel file a notice of appearance (doc. # 71), responded to the motion for default judgment (doc. # 79), and filed an answer to Sporting's third-party complaint (doc. # 78). Accordingly, the court finds no reason to enter default judgment against Tula and will deny Sporting's motion.

**III.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Sporting Supplies International, Inc.'s motion for summary judgment (docs. ## 48, 49) be, and the same hereby is, GRANTED with respect to plaintiff's negligence/gross negligence claim, and DENIED with respect to plaintiff's strict liability in tort claim.

IT IS FURTHER ORDERED that Tulammo USA, Inc.'s motion to dismiss third-party complaint (doc. # 51) be, and the same hereby is DENIED.

IT IS FURTHER ORDERED that Sporting Supplies International, Inc.'s motion for default judgment (docs. ## 69, 70) be, and the same hereby is, DENIED.

DATED May 18, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**